

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## ALEXANDRIA DIVISION

| | |
|---|---|
| RUBY LEE LOLLIS, et al. | CIVIL ACTION NO. 1:05-cv-01474 |
| -vs- | JUDGE DRELL |
| CONCORDIA PARISH, et al. | MAGISTRATE JUDGE KIRK |

### R U L I N G

Two motions for summary judgment and one motion *in limine* are currently pending in this matter.  For the reasons described below, the Court rules as follows:

   (1)   the Renewed Motion for Summary Judgment filed by the Defendants (Doc. 109) will be **DENIED**;

   (2)   the Motion for Summary Judgment filed by the Defendants (Doc. 97) will be **DENIED**; and

   (3)   the Motion *in Limine* to Exclude Documents (Doc. 114) will be **DENIED**.

Disposition will follow by a separate judgment.

## I.   Background

This lawsuit arises from the tragic shooting death of Frederick Lollis ("decedent") on August 23, 2004.  The decedent was shot by Deputy David Hedrick ("Deputy Hedrick") of the Concordia Parish Sheriff's Office ("CPSO").  The plaintiffs in this case ("Plaintiffs"), all of whom are alleged family members of the decedent, claim that the shooting was not legally justifiable under the circumstances.  As such, the

Plaintiffs seek monetary relief for alleged violations of the decedent's constitutional rights under 42 U.S.C. § 1983, negligence, intentional and/or negligent infliction of emotional distress, and punitive damages.

On the evening of August 23, 2004, Deputy Hedrick responded to a call regarding an assault that took place on Doty Road in Ferriday, Louisiana.  The complainant, Theotis Cummings ("Mr. Cummings"), reported that, earlier in the day, two men had pulled up beside him in a gray car.  One of the men, according to Mr. Cummings, attempted to strike him with a pistol.  After gathering this information, Deputy Hedrick elected to bring Mr. Cummings in his patrol car in an attempt to locate the assailants.

At approximately 8:30 P.M., Deputy Hedrick and Mr. Cummings came upon the two suspects at the intersection of Doty Road and Abraham Street.  Mr. Cummings identified the two individuals as the perpetrators of the assault.  It is here that the facts begin to diverge rather widely, according to the parties.  Although the substance of these differences will be discussed more fully below, it is evident that a confrontation erupted between the decedent and Deputy Hedrick, during which Deputy Hedrick fatally shot the decedent.  Thereafter, Deputy Hedrick called for backup units and an ambulance, and the Louisiana State Police initiated an investigation of the shooting.

These motions present three distinct questions to be determined by the Court: (1) whether the circumstances surrounding the confrontation between Deputy Hedrick and the decedent justified the shooting, or more specifically, whether the

decedent brandished a firearm during the confrontation; (2) whether the Plaintiffs

have standing to prosecute this lawsuit as relatives of the decedent; and (3) whether

a report of the results of DNA testing performed by the Plaintiffs to establish

paternity are admissible.  We will address these questions in turn.

II.      **Law and Analysis**

    A.      **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), the Court will grant a party's

motion for summary judgment only if:

> the pleadings, the discovery and disclosure materials on file, and any
> affidavits show that there is no genuine issue as to any material fact and
> that the movant is entitled to judgment as a matter of law.

A genuine issue of material fact exists if the evidence is such that a reasonable jury

could return a verdict in favor of the nonmoving party.  See Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 249-50 (1986).

In conducting this analysis, the Court must construe "all of the evidence and

all of the factual inferences from the evidence . . . in a light most favorable to the party

opposing the motion." King Realty Co., Inc. v. Chevron USA, Inc., 575 F.3d 510, 517

(5th Cir. 2009).  Any doubts are likewise resolved in favor of the nonmoving party.

U.S. ex rel. Longhi v. United States, 575 F.3d 458, 465 (5th Cir. 2009).  Once the

movant has directed the Court's attention to portions of the record which reflect an

absence of a genuine issue of material fact, the nonmoving party bears the burden of

demonstrating that a genuine issue of material fact exists.  United States v. $

92,203.00 in U.S. Currency, 537 F.3d 504, 506-07 (5th Cir. 2008).  "However, mere

conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996).

**B.     Motion for Summary Judgment on the Merits**

The Defendants' first motion for summary judgment seeks dismissal of all of the Plaintiffs' claims.  Essentially, the Defendants contend that there is no genuine issue of material fact as to whether the decedent possessed a gun at the time of the fatal shooting, and that the Plaintiffs' theory of a gun having been planted at the scene is unsupported by the evidence.  The Plaintiffs dispute that the decedent drew a weapon at the time of the shooting, and further argue that, even if the decedent was armed, Deputy Hedrick's use of force may still have been unreasonable.

The Fifth Circuit has summarized the law governing excessive force claims brought under 42 U.S.C. § 1983, specifically involving the use of deadly force, as follows:

> To prevail on an excessive force claim, a plaintiff must show (1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.  An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others. The question is one of "objective reasonableness," not subjective intent, and an officer's conduct must be judged in light of the circumstances confronting him, without the benefit of hindsight.

Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009) (internal citations and quotations

omitted).[1] "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009) (quoting Graham, 490 U.S. at 396). Arguments by a nonmovant which amount to "conjecture arising from undisputed facts" do not raise genuine issues of material fact in an excessive force case, but discrepancies between an officer's version of events and the accounts of eyewitnesses, for example, may be sufficient to justify a denial of summary judgment. See Ontiveros v. City of Rosenberg, 564 F.3d 379, 385 (5th Cir. 2009) (citing Bazan v. Hidalgo County, 246 F.3d 481 (5th Cir. 2001)).

After carefully reviewing the evidence, the Court finds that a number of genuine issues of material fact remain in dispute. Most notably, there is significant disagreement as to whether the decedent possessed a weapon at the time of the shooting. Within that broad issue, various ancillary questions arise. The Plaintiffs have presented deposition testimony from Frankie Lee Brown ("Ms. Brown"), an eyewitness to the shooting. Ms. Brown testified that she never saw a gun in the decedent's hands or in his waistband, which directly contradicts Deputy Hedrick's testimony that the decedent pulled a gun from his waistband prior to the shooting.[2]

---

[1] Excessive force claims are governed by the Fourth Amendment: "'[A]ll claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard.'" Goodman v. Harris County, 571 F.3d 388, 397 (5th Cir. 2009) (quoting Graham v. Connor 490 U.S. 386, 395 (1989) (internal quotation marks omitted)).

[2] Although the Defendants challenge the reliability, potential bias, and relevance of Ms. Brown's testimony, such credibility determinations are precisely the type if inquiries that should be made at a trial on the merits. As the Fifth Circuit has made clear, "[c]redibility determinations have no

Other witnesses to the shooting also report that they did not see the decedent in possession of a weapon.[3]

In addition to the differing eyewitness accounts, there is also disagreement as to how the weapon recovered at the scene may be linked to the decedent. Mr. Cummings, the complainant who was sitting in the patrol car during the incident, claims to have seen a weapon in the decedent's hand after the shooting, while Deputy Hedrick maintains that he did not see a weapon at that time. Rather, the weapon was recover some fifteen to twenty feet from the decedent's body, and the decedent's fingerprints were not found on the weapon. To complicate matters further, the Plaintiffs have presented an expert report opining that the gun could not have traveled that distance after leaving the decedent's grasp without having retained his fingerprints.[4]

Moreover, eyewitness accounts are contradictory as to whether Deputy Hedrick attempted to use mace to subdue the decedent. Some deponents, including

---

place in summary judgment proceedings." <u>Richardson v. Oldham</u>, 12 F.3d 1373, 1379 (5th Cir. 1994).

[3] Defense counsel argues that Ms. Brown "did not testify that no gun was present." (Doc. 108, p. 3.) Presumably, this argument would apply to a number of the other deponents on this and other issues as well. We appreciate the distinction between attesting to the absence of a gun, and denying having seen or been aware of the presence of a gun. In either case, however, Ms. Brown witnessed the event, and claims that she did not see a gun on the decedent's person. The trier of fact could hypothetically conclude that, given her vantage point, if she did not see a weapon at any point, then none could have been present. A witness's testimony need not utterly debunk the defendants' version of the events in order to raise a genuine issue of material fact.

[4] DNA evidence linking the decedent to the weapon was also uncovered during subsequent investigations, but this same expert report indicates that the evidence may have been recovered only after cross-contamination at the crime scene. The Plaintiffs argue that the crime scene was, as a general matter, unruly and poorly secured. This evidence creates additional factual issues requiring a determination by the trier of fact.

Mr. Cummings, maintain that they never saw Deputy Hedrick use mace during the confrontation. Deputy Hedrick, however, claims that when he observed the gun in the decedent's waistband, he sprayed him with mace, after which the decedent grabbed the weapon. And finally, some witnesses, such as Ms. Brown, claim that the decedent had his hands raised during the entire confrontation, while others, such as Cleotis Cummings, the complainant's father, claimed to have never seen the decedent raise his hands.[5]

Given the fact-intensive nature of excessive force claims, and the flexible "objective reasonableness" inquiry mandated by the Fourth Amendment, we find these disputes of fact material to the outcome of this case. The questions surrounding the decedent's physical movements, his responses to Deputy Hedrick's commands, and certainly whether he reached for or brandished a weapon, are all critical to evaluating the reasonableness of Deputy Hedrick's conduct. A suspect's refusal to obey commands and movements which may indicate that the suspect was reaching for a weapon have often been held to justify the use of deadly force by an officer. See generally Manis, 585 F.3d at 844 (chronicling cases in which the Fifth Circuit "has found an officer's use of deadly force to be reasonable when a suspect moves out of the officer's line of sight such that the officer could reasonably believe the suspect was reaching for a weapon"). Ultimately, the determination of liability in

---

[5] This listing is not necessarily exhaustive. For purposes of our ruling, we have discussed just some of the more contested and substantial factual disputes in the case, any one of which may be sufficient to deny summary judgment at this point.

7

this case may turn upon any one of these questions, which at this juncture, are far from clear to the Court.

The evidence presented by the Plaintiffs on this motion may or may not carry the day at trial but, construed in a light most favorable to the Plaintiffs, amounts to much more than conclusory allegations.  Therefore, because genuine issues of material fact remain, the Defendants' motion for summary judgment will be DENIED.

**C.    The Renewed Motion for Summary Judgment Based Upon the Plaintiffs' Alleged Lack of Filiation to the Decedent**

We next address the motion for summary judgment relating to the question of standing.  The Defendants argue that the named Plaintiffs claiming to be the decedent's children have submitted no evidence to establish their filiation to the decedent, and thus, are not entitled to recover pursuant to Louisiana's wrongful death and survival statutes.  For purposes of summary judgment, we disagree.

**1.    *Background***

At present, there are nine named Plaintiffs remaining in the case.  Of those nine individuals, four claim to be the decedent's children: Latoya Brown, Erica Jones, Keosha Spurs, and Frederick Bethley (collectively, "children Plaintiffs").[6]  None of these individuals share a last name with the decedent, and the decedent's name is not listed on the birth certificates of Latoya Brown or Frederick Bethley.  No birth certificates have been submitted for Erica Jones or Keosha Spurs.  Because of the lack

----

[6] The remaining named Plaintiffs, and their alleged relationships to the decedent, are: Ruby Lee Lollis (mother); Albert Spurs (brother), David Spurs (brother), Reginald Spurs (brother), and Irving James Spurs (brother).

of definitive record evidence, the children Plaintiffs each sought to establish their paternity with the decedent through DNA testing.

For this purpose, the children Plaintiffs consulted ReliaGene Technologies, Inc. ("ReliaGene") in New Orleans, Louisiana, a corporation licensed and accredited to perform paternity testing services. The test results indicated that the decedent was not excluded as the father of any of the four children Plaintiffs, and that the probability of paternity for each of the children Plaintiffs was as follows: (1) 99.96% as to Frederick Bethley; (2) 99.99% as to Erika Jones; (3) 99.99% as to Latoya Brown; and (4) 99.99% as to Keosha Spurs. (Doc. 112-4, pp. 1-4). These results were all "based on the assumption that Ruby Lollis is the biological mother of Frederick Lollis and that Reginald Spurs is the full biological brother of Frederick Lollis." (Doc. 112-4, p. 1).

2.  *Initial Arguments*

The Plaintiffs first argue that the motion is untimely, because it was filed nearly two months after the deadline for the filing of dispositive motions passed on June 12, 2009. The Plaintiffs also maintain that the motion is repetitive, as the Court denied both a partial motion for summary judgment based upon these same grounds on May 1, 2007 (Doc. 46), and a motion for reconsideration or certification for appealability on June 8, 2007 (Doc. 54).

However, given the continuing disputes regarding the Plaintiffs' relationship to the decedent, and the dispositive nature of the standing question, we felt it necessary to allow the parties to explore the issue fully. Thus, at the final pretrial conference on June 18, 2009, the Court ordered that "[o]n or before September 21,

9

2009, the parties shall advise the Court if any remaining contest as to filiation exists .
. . [and] may take such depositions as are necessary on this issue." (Doc. 101, p. 1).
This order extended the opportunity to present arguments to the Court on the issue of
standing, which the Defendants have now done.  The motion is neither repetitive in
principle[7] nor untimely.

 3.  *Applicable Law*

 The Fifth Circuit has held that "a party must have standing under the state
wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983,
and 1988."  Pluet v. Frasier, 355 F.3d 381, 383 (5th Cir. 2004).  In Louisiana, "[t]o
recover under a claim for wrongful death and survival, a plaintiff must fall within the
class of persons designated as a beneficiary as prescribed by La. Civ. Code arts.
2315.1 and 2315.2."  Turner v. Busby, 883 So. 2d 412, 416 (La. 2004); see also Jones v.
Allen Parish Corr. Ctr., No. 06-0056, 2006 WL 1004276, at *1 (W.D. La. Apr. 12, 2006)
("Articles 2315.1 and 2315.2 of the Louisiana Civil Code designate the persons that
may bring an action for wrongful death and in whose favor the decedent's actions
survive, including a 42 U.S.C. § 1983 civil rights claim.").  Surviving children recover
to the exclusion of all other categories of potential claimants under both articles
2315.1 and 2315.2.  See Turner, 883 So. 2d at 416.[8]  Therefore, the decedent's alleged

---

 [7] We specify that the motion is not repetitive "in principle" because, as we will see, the Court finds that the motion is largely repetitive in fact.

 [8] Because a decedent's children have exclusive standing to assert wrongful death and survival claims under Louisiana law, the Court previously dismissed the wrongful death and survival claims of Ruby Lollis, Albert Spurs, David Spurs, Reginald Spurs, and Irving James Spurs (collectively, "non-children Plaintiffs"), as non-children of the decedent. (Doc. 18).  The Court assumed, for purposes of that motion only, that the children Plaintiffs were, in fact, the children of the decedent.  Subsequently,

10

children must prove filiation in order to have standing.

Under Louisiana law, the biological relationship of the child to the tort victim, rather than the marital status of the child's parents, is the key factor in establishing standing to bring a wrongful death or survival action; "illegitimate" children have the same right to bring actions under article 2315 as "legitimate" children.  Jenkins v. Mangano Corp., 774 So. 2d 101, 103 (La. 2000) (citing Levy v. Louisiana, 216 So. 2d 818 (1968)).[9]  The term "children" is defined as "those persons born of the marriage, those adopted, and those whose filiation to the parent has been established in the manner provided by law, as well as descendants of them in the direct line."  La. Civ. C. art. 3506(8).  The children Plaintiffs in this case, judging from the proof now before the Court, were neither born of a marriage nor adopted, and thus, must now establish their filiation as provided by law.

The law governing filiation or paternity actions was revised by La. Acts 2005, No. 192, effective June 29, 2005, which replaced former Louisiana Civil Code article 209 with article 197.  In re Succession of Smith, No. 09-969, 2010 WL 363863, at *1 (La. App. 3d Cir. Feb. 3, 2010).  The Louisiana legislature made the provisions of article 197 "applicable to all claims existing or actions pending on its effective date and all claims arising or actions filed on and after its effective date."  La. Acts 2005, No. 192,

---

on June 22, 2009, the Court dismissed the claims of the non-children Plaintiffs under 42 U.S.C. § 1983 for lack of standing.  (Doc. 102).  Thus, the children Plaintiffs are now the only parties asserting claims under § 1983, as they alone may have standing in the case.

[9]  Because the children in this case do not share the decedent's last name, and because there is no proof of the decedent's marital status before the Court, we assume, without deciding, that the children would be classified as "illegitimate."  Moreover, we use this term for purposes of clarity only.

§ 3.  Because this action was filed on August 16, 2005, less than two months after the effective date of the article, and less than one year after the decedent's death, article 197 applies in this case.[10]  However, aside from a critical change in the peremptive period, which will be discussed below, the substance of the articles is similar to prior law.  See La. Civ. C. art. 197 cmt. (a) ("This Article, for the most part, codifies prior jurisprudence interpreting former [article] 209.").  Therefore, at least some jurisprudence cited herein will appropriately and properly refer to the former article.

4.    *The Nature of the Action*

A threshold concern in this case is that, while the issue of filiation is certainly not new, no amendments to the complaint in this matter, nor any separately filed actions, have sought to formally establish filiation.  The fact that no action or claim has been titled as one for filiation, however, does not necessarily foreclose our consideration of evidence of filiation at trial.

Under former article 209, an action for filiation could be cumulated with an action for damages.  See *In re Bester*, 828 So. 2d 644, 649 (La. App. 4th Cir. 2002).  Moreover, Louisiana law disfavors "[h]arsh, technical rules of pleadings."  Reese v.

---

[10]  We reached this conclusion in our ruling denying the Defendants' motion for partial summary judgment on May 1, 2007.  (Doc. 46).  Indeed, under the revised article, we concluded that "Plaintiffs' failure to filiate to the decedent is of no moment at this stage of the litigation."  (Doc. 46, p. 6).  That holding remains firm, as we will explain in detail below.  Current La Civ. C. art. 197 provides:

A child may institute an action to prove paternity even though he is presumed to be the child of another man. If the action is instituted after the death of the alleged father, a child shall prove paternity by clear and convincing evidence.

For purposes of succession only, this action is subject to a peremptive period of one year. This peremptive period commences to run from the day of the death of the alleged father.

12

St. Dep't of Pub. Safety and Corr., 866 So. 2d 244, 249 (La. 2004).  As such, "a court may consider pleadings as constituting an action for filiation regardless of whether a party titles them as such.  Whether a particular pleading can reasonably be construed as an action for filiation, however, should be determined on a case-by-case basis."  In re Bester, 828 So. 2d at 649.  The Louisiana Supreme Court endorsed this approach where "[the plaintiff, in his original petition,] identified [the decedent] as his father and himself and [the plaintiff's brother], both with different last names from the decedent, as his sole surviving children."  See Reese, 866 So. 2d at 250.  "Construing the pleadings to create substantial justice, [the court held] that the bare allegations of the timely-filed original petition, while not artfully drafted, give fair notice to the defendants of the plaintiff's attempt to set forth a cause of action for filiation."  Id. at 250-51.[11]

In this case, similar "bare allegations" were set forth in the original and first supplemental and amending complaints.  The averments refer to each of the children Plaintiffs as the adult or minor son or daughter of the decedent, which clearly put the Defendants on notice of the Plaintiffs' intention to seek relief as the decedent's surviving children.  These assertions are likely sufficient to set forth a cause of action for filiation under Louisiana jurisprudence.

Nonetheless, although we must apply state substantive law in this case, we

---

[11]  In that case, the plaintiffs filed a supplemental and amending petition alleging that they had been acknowledged by the decedent.  Reese, 866 So. 2d at 246.  The court found that, because the original petition put the defendants on notice of the plaintiffs' filiation claims, "the first supplemental and amending petition relates back to the original petition as it arises out of the same factual situation set forth in the original petition."  Id. at 251.

13

are bound to apply federal rules of procedure.  <u>See</u> <u>Brown v. Miller</u>, 519 F.3d 231, 238

(5th Cir. 2008) ("[F]ederal courts use federal procedure even when applying state

law.").  Thus, the failure to formally title a claim as one for filiation is not dispositive

in this Court.  To the contrary, we sanctioned the taking of evidence on the issue of

filiation in our ruling denying the Defendants' motion for summary judgment.  (Doc.

46, p. 6).  Practically, the paternity question has been investigated and argued since

the filing of the Defendants' initial motion for partial summary judgment on January

17, 2006.  (Doc. 10).  Although no caption uses the term "filiation," the issue is, and

has long been, a well known controversy for both parties.  It would be nonsensical for

the Court at this point to deny the Plaintiffs a fair opportunity to prove their claims.

Therefore, once again, we decline to reach a firm determination on filiation, and we

will allow the taking of evidence on the issue of filiation at trial.

> 5.   *The Peremption Issue*

La. Civ. C. art. 197 provides for a one-year peremptive period for bringing a

paternity action for purposes of succession.  However, the article and its commentary

clearly establish that the one-year peremptive period does not apply to actions

brought for the purpose of determining an alleged child's right to bring a wrongful

death or survival action.  <u>See</u> <u>Gibbs v. Delatte</u>, 927 So. 2d 1131, 1139 (La. App. 1st Cir.

2005) ("[T]he comments to new [article 197] pursuant to 2005 La. Acts No. 192, which

replaces former [article 209], makes it abundantly clear that the state's sole interest in

placing time limitations on filiation actions is for succession purposes only.").

Commentary to the article provides:

14

The time period for bringing the paternity action under this Article is limited to succession matters only. This is a change in the law. *The time for instituting a paternity action for the purpose of exercising the right to support, to sue for wrongful death, or to claim Social Security benefits or the like, is not limited by this Article.* Prior law required that a paternity action under former Civil Code Article 209 (rev. 1984) be instituted within nineteen years of the child's birth or within one year from the alleged parent's death, whichever first occurred. If the action was not timely instituted, the child could not thereafter establish his filiation for any purpose, except to recover damages under Civil Code Article 2315. That was a harsh result not justified by any policy consideration. For the particular purpose of succession, on the other hand, there is a time limit on instituting the action--to facilitate the orderly disposition of estates and the stability of land titles.

La. Civ. C. art. 197 cmt. (e) (emphasis added).

In light of these principles, we note that the claims of all four children Plaintiffs remain viable.  The complaint was filed on August 16, 2005, less than one year after the decedent's death.  Three of the four children Plaintiffs were listed in that complaint, and thus, their claims would be beyond reproach in any case.  However, Keosha Spurs was added as a plaintiff in this lawsuit by amendments to the complaint filed on August 24, 2005, one year and one day after the decedent's death. While her claims may have been subject to dismissal under the old law, article 197 does not impose a one-year peremptive period upon her claims.

       6.    *The Reliability of the Report*

The Defendants claim that the DNA evidence before the Court is not reliable in establishing the filiation of any of the children Plaintiffs to the decedent.  The crux of this argument is that the presumption that Reginald Spurs is the decedent's full biological brother cannot be verified.

15

At this point, the Court cannot engage in a substantive review of the reliability of the report.  "In reviewing the evidence at summary judgment, we must 'refrain from making credibility determinations or weighing the evidence.'"  Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 478 (5th Cir. 2008) (quoting Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007)).  For summary judgment purposes, we must merely determine whether the evidence is sufficient to raise a genuine issue of material fact.  Previously, we held, without reaching a determination on the merits, that, "for summary judgment purposes, the DNA evidence submitted by the Plaintiffs is sufficient to establish paternity with the decedent."  (Doc. 46, p. 6).  We now reaffirm that ruling, because the report is still the only scientific evidence before the Court, and because at least some corroborating evidence has been offered by the Plaintiffs.  Significantly, despite the additional period allowed for development of the paternity issue, the Defendants have offered no countervailing DNA analysis.

We acknowledge, however, defense counsel's efforts to rebut the presumption that Reginald Spurs is the decedent's full biological brother.  We further note that these efforts revealed a number of potential weaknesses in the report, including the apparent lack of record evidence establishing the identity of Mr. Spurs's (or the decedent's) father.  That void, we realize, could devastate the scientific foundation of the report.  However, nothing revealed in defense counsel's investigation definitively refutes the assumption that Mr. Spurs is the decedent's full biological brother; it

16

simply has not been corroborated.[12]

Moreover, the Plaintiffs have submitted an affidavit from Ruby Lee Lollis, in which Ms. Lollis claims that Mr. Spurs and the decedent did, in fact, share the same biological father.  We recognize the potential evidentiary flaws in Ms. Lollis's testimony.  However, it is not our role to weigh the credibility of such testimony on summary judgment, particularly without some evidence casting doubt upon the veracity of Ms. Lollis's statements.  See Richardson, 12 F.3d at 1379; see also Carroll v. Metro. Ins. and Annuity Co., 166 F.3d 802, 805 (5th Cir. 1999) ("Neither we nor the district court should weigh the evidence or make credibility determinations when evaluating depositions, affidavits, or other summary judgment evidence.").  Thus, the affidavit combined with the report itself is sufficient to create a genuine issue of material fact for trial[13]

Finally, even if we were to refuse consideration of the DNA report, the absence of DNA evidence does not preclude further consideration of other evidence of

---

[12] We use the term "investigation" kindly.  Defense counsel's "investigation" purportedly consisted of: (1) a request to the Plaintiffs for the identification and chain of custody documents for Reginald Spurs; (2) the acquisition of a certified copy of Mr. Spurs's birth certificate; (3) unsuccessful phone calls to phone numbers formerly listed for ReliaGene; (4) correspondence with Orchid Cellmark, Inc. ("Orchid"), the company that merged with ReliaGene, which revealed that "the records for [ReliaGene] have been archived" (Doc. 109-2, p. 5); and (5) submission of a formal written request to Orchid for the identification and chain of custody documents on July 27, 2009 (Doc. 110-4), after which defense counsel states that, "to date no additional verification records or documents have been located" (Doc. 109-2, p. 5).  Once again, despite the significant passage of time since the Defendants received the paternity test results, defense counsel has failed to submit contrary scientific or sworn testimonial evidence which directly contradicts the Plaintiffs' claims.

[13] Moreover, the Plaintiffs have submitted evidence that the decedent formally acknowledged his paternity of Latoya Brown.  This fact raises other questions, including the implications of an acknowledgment of one child if the DNA samples of the four children match each other.

17

paternity under Louisiana law.[14]  Jurisprudence interpreting former article 209

establishes that, when a child is illegitimate, and the alleged parent is deceased, the

child is required to prove, "by clear and convincing evidence, that the parent

informally acknowledged the child during his lifetime."  Jenkins v. Mangano Corp.,

774 So. 2d 101, 103 & n.3 (La. 2000).  In determining whether a parent has informally

acknowledged a child, courts consider various factors, including:

> the alleged father's acknowledgment of the child in formal writings or in
> public or private conversations, causing the education of the child as his
> own, . . . living in concubinage with the mother in his home at the time
> of the child's conception. . . . rearing the child in his home, naming the
> child in his will, giving the child his surname, and holding the child out
> in the community as his own.

Id.  In this case, the Plaintiffs have submitted evidence that the decedent formally

acknowledged the paternity of at least one of the children Plaintiffs, Latoya Brown.

As to the other children Plaintiffs, evidence of informal acknowledgment may suffice

to establish paternity for purposes of standing.

Therefore, because genuine issues of material fact remain as to the issue of

paternity, the Defendants' renewed motion for summary judgment will be DENIED.

### D.     Motion *in Limine* to Exclude Documents of ReliaGene

Finally, the Defendants seek to exclude the use of the ReliaGene report as

evidence at trial, based upon three arguments: (1) the report itself is not reliable as

evidence of filiation; (2) the report is inadmissible as hearsay; and (3) no proper

---

[14] While DNA testing which *excludes a person from paternity* usually forecloses further
consideration of paternity evidence, Louisiana statutory law "does not mandate that DNA is the sole
factor in determination of paternity."  Meridian Res. & Exploration LLC v. Cormier, No. 06-1095, 2007
WL 4233777, at *3 (E.D. La. Nov. 29, 2007).

foundation has been established to introduce the report, because the children Plaintiffs have never brought a filiation action to establish their relationship to the decedent.  The first and third arguments have already addressed in detail, and neither is sufficient to warrant relief under this motion.  Therefore, we consider only the Defendants' arguments as to hearsay.

In general, the Defendants assert that the report contains out of court statements offered to prove the truth of the matter asserted; specifically, that the decedent is the father of each of the children Plaintiffs.  Both parties have indicated that ReliaGene is no longer operating as an independent business in Louisiana, and was acquired by another company, Orchid, in 2008.  As such, neither party has successfully contacted a ReliaGene representative, or anyone else who could testify as to the foundation or reliability of the report.

The Plaintiffs respond first by citing a portion of the Uniform Act on Blood Tests to Determine Paternity, La. R.S. § 9:397.3, which generally "authorizes the introduction of blood test results without the necessity of the personal appearance and live testimony of an expert."  State v. Simien, 677 So. 2d 1138, 1142 (La. App. 3d Cir. 1996).[15]  However, the statute constitutes a rule of evidence, as it provides for the

---

[15]  The critical provision of this statute provides that:
"[i]f there is no timely challenge to the testing procedure or if the court finds there has been no procedural error in the testing procedure, the certified report shall be admitted in evidence at trial as prima facie proof of its contents, *provided that the party against whom the report is sought to be used may summon and examine those making the original of the report as witnesses under cross-examination.*"
La. R.S. § 9:397.3(B)(2)(a) (emphasis added).  The italicized portion of this statute may provide an additional difficulty for the Plaintiffs, even if it did apply given that no potential witness has been contacted to this point.

admissibility of certain types of scientific reports. "Diversity cases in federal court are . . . governed by federal, not state, rules of evidence." Morris v. Homco Int'l, Inc., 853 F.2d 337, 341 (5th Cir. 1988); see also King v. Ill. Cent. R.R., 337 F.3d 550, 556 (5th Cir. 2003) ("Generally, federal courts apply their own evidentiary rules in diversity matters."). Thus, even if this statute did provide for the automatic admissibility of DNA testing reports, this Court is not bound by a state evidentiary rule. We are aware of no federal statute or rule containing special rules of admissibility for DNA test results. This argument is without merit.

Next, the Plaintiffs assert that the report is admissible under the residual exception to the hearsay rule, codified as Fed. R. Evid. 807. However, a ruling on this issue, and in general, on the admissibility of the report, would be premature at this point. As of the time that the Plaintiffs responded to this motion, correspondence from the Plaintiffs to Orchid had not yet been responded to, and the investigation into this matter had, in our estimation, not yet been completed. The admissibility of the report may depend entirely upon the final outcome of this investigation. Still, without foundation for its admissibility being established through witnesses, its admissibility is in doubt.

As such, the Defendants' motion *in limine* is DENIED, and we reserve ruling as to the admissibility of the report for trial, pending the submission of proper proof as to foundation for the report.

III.   **Conclusion**

As we noted at the outset, the circumstances surrounding this case are both

20

tragic and complex.  There are wide divergences of fact in many aspects of the case, at least under the summary judgment evidence presently before the Court.  Moreover, some of the evidentiary questions presented by the Defendants' motions cannot be properly resolved at this stage of the litigation.  Put simply, under the law and the evidence as it stands, trial is the more appropriate forum in which to answer the questions remaining in this case.

SIGNED on this _9_ day of February, 2010 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE

21